2006 ND 183

**PEOPLES STATE BANK OF TRUMAN, INC., a Minnesota Corporation, Plaintiff and Appellant**

v.

**MOLSTAD EXCAVATING, INC., a North Dakota corporation, Defendant**

and

**FGOH2O, Inc., d/b/a Fargo Water Equipment, Defendant and Appellee.**

No. 20050444.

Supreme Court of North Dakota.

Aug. 24, 2006.

Ryan R. Dreyer (argued), Gislason & Hunter, L.L.P., New Ulm, MN, and John S. Foster (on brief), Zimney Foster, P.C., Grand Forks, ND, for plaintiff and appellant.

Thomas R. Olson (argued) and Erin M. Conroy (on brief), Jeffries, Olson & Flom, P.A., Fargo, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Peoples State Bank of Truman ("Bank"), now known as Profinium Financial, brought a summary judgment motion against Molstad Excavating ("Molstad") claiming the Bank is entitled to $20,000 being held by Molstad. FGOH2O ("Fargo Water") also brought a summary judgment motion claiming it was entitled to the $20,000 held by Molstad. Judgment was entered in favor of Fargo Water and the Bank appealed. We affirm.

I

[¶ 2] Haycraft Construction, Inc. ("Haycraft") borrowed money from the Bank. To secure repayment of this debt, Haycraft executed a security agreement pledging as collateral its present and future inventory, present and future accounts, present and future contract rights, and all machinery, equipment, vehicles, furniture, and fixtures then known or thereafter acquired. The Bank filed the security agreement with the Minnesota Secretary of State. This assignment allowed the Bank to collect money owed to Haycraft by other parties if Haycraft failed to pay back the money it borrowed from the Bank.

[¶ 3] The City of Grand Forks awarded Molstad, as the general contractor, a contract to perform work for the City. In February 2002, Molstad entered into a subcontract with Haycraft ("Molstad/Haycraft agreement") under which Haycraft would perform some of the work necessary to complete the project for Grand Forks and Molstad would pay Haycraft for its work.

[¶ 4] Paragraph 2 of the Molstad/Haycraft agreement allowed Molstad to withhold any money it owed to Haycraft if Molstad received notice of any claim arising out of the labor or materials that were furnished for the project. Molstad could also withhold any amount due to Haycraft on account of any actions or failures to act by Haycraft in the performance of the subcontract. Under the Molstad/Haycraft agreement, Haycraft explicitly agreed to pay all costs in connection with completing the project and also agreed to pay the bills as they became due.

[¶ 5] To finish its work for the project, Haycraft bought materials from Fargo Water. Haycraft still owes Fargo Water $20,000, the balance remaining on the account, for the materials. Fargo Water has not charged interest or finance charges on this balance. Haycraft completed all the work it was required to do for the project and Molstad owed Haycraft $21,033.72 for the work Haycraft performed. Molstad did not pay Haycraft because Haycraft still owed Fargo Water $20,000. Molstad withheld the entire $21,033.72 it owed Haycraft.

[¶ 6] In March 2003, Haycraft assigned its accounts receivable to the Bank. Under the assignment, the Bank sent notices to Molstad requesting that Molstad make all payments owed to Haycraft, under the subcontract, to the Bank. Molstad refused to pay the Bank, arguing the contract provision gave Molstad the right to keep the

money until Haycraft paid Fargo Water the $20,000 Haycraft owed Fargo Water.

[¶ 7] The Bank sued Molstad to collect the $21,033.72, alleging, among other things, that Fargo Water was not a part of the contract between Molstad and Haycraft and therefore Molstad had no right to withhold the money. Fargo Water joined the lawsuit between the Bank and Molstad. The Bank wanted the district court to order Molstad to release the $21,033.72 to the Bank. Fargo Water wanted the district court to order Molstad to pay Fargo Water $20,000 and release the remaining $1,033.72 to the Bank.

[¶ 8] The Bank brought a motion for summary judgment to collect from Molstad. District Judge Braaten granted, in part, the Bank's motion for summary judgment and determined: (1) Haycraft properly assigned its right to the Bank; (2) because the Bank's security interest was subject to all the terms of the subcontract between Molstad and Haycraft, Molstad did not convert the Bank's collateral by refusing to pay the Bank upon demand; (3) the condition of the subcontract allowed Molstad to withhold payment to Haycraft, or the Bank, until Haycraft, or the Bank, settled Fargo Water's claim for $20,000; (4) the Bank was entitled to receive $1,033.72 of the amount withheld by Molstad and the remaining $20,000 should be withheld by Molstad pending verification that the Fargo Water claim has been settled; and (5) the Bank's claim for the remaining $20,000 was dismissed without prejudice because once the Bank reaches a settlement of the Fargo Water claim, Molstad should release the $20,000 to the Bank.

[¶ 9] Subsequent to the district court decision, the Bank and Fargo Water were unable to reach an agreement on Fargo Water's $20,000 outstanding claim. The Bank and Fargo Water again filed motions for summary judgment, each claiming they were solely entitled to the $20,000. District Judge Kleven granted Fargo Water's motion for summary judgment, stating Fargo Water is entitled to the $20,000 and requiring Molstad to release the money to Fargo Water.

II

[¶ 10] The Bank contends the district court erred by violating the law of the case. The Bank argues Judge Kleven violated Judge Braaten's earlier judgment and order and therefore erred by finding Fargo Water had a claim against Molstad or the City of Grand Forks, by misconstruing the Molstad/Haycraft agreement, and by releasing the $20,000 to Fargo Water. "[A]s generally used, the law of the case is defined as 'the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same.'" *Tom Beuchler Const., Inc. v. City of Williston*, 413 N.W.2d 336, 339 (N.D.1987). This Court has held the law of the case doctrine "encompasses not only those issues decided on the first appeal, but also those issues decided by the trial court prior to the first appeal which were not presented for review at the first appeal." *Id.*

[¶ 11] This Court has stated it agrees with the court in *Ellis v. U.S.*, 313 F.3d 636 (1st Cir.2002), "noting there is a presumption 'that a successor judge should respect the law of the case' and 'orderly functioning of the judicial process requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special circumstances.'" *See In re Guardianship and Conservatorship of Onstad*, 2005 ND 158, ¶ 11, 704 N.W.2d 554

(stating in footnote 2 that this Court has been less effusive about application of the doctrine in a single proceeding, involving successor judges within a coordinate court and stating the Court found it helpful to quote statements from *Ellis*).

[¶ 12] The law of the case doctrine has two branches. *Ellis v. U.S.*, 313 F.3d 636, 646 (1st Cir.2002). The branch applicable here "provides that 'unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.'" *Id.* "This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *Id.* "The presumption, of course, is that a successor judge should respect the law of the case." *Id.* "The orderly functioning of the judicial process requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special circumstances." *Id.*

[¶ 13] "The question of what circumstances justify revisiting a ruling previously made in the same proceeding by a judge of coordinate jurisdiction is case-specific." *Id.* at 647. The resolution of that question is guided by certain general principles which the *Ellis* court discussed. *Id.* The principle most applicable to this case provides that "reconsideration is proper if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative." *Id.*

[¶ 14] In an October 5, 2004 Judgment, Judge Braaten ordered:

2. Defendant Molstad Excavating, Inc., is entitled to withhold the $20,000.00 from plaintiff [the Bank] until such time as the Fargo Water, Inc. claim is settled. At that time, Molstad Excavating, Inc., is to release the remaining $20,000.00 to plaintiff [the Bank].

3. This Order and Judgment is without prejudice to plaintiff's claim for $20,000.00 against Molstad Excavating, Inc.

[¶ 15] The earlier order was clearly designed to be tentative pending the settlement of the claim. Fargo Water and the Bank were unable to settle the claim. Without deciding when, under appropriate circumstances, the original judge or a successor judge may revisit a partial summary judgment before final judgment is entered, here, under the terms of Judge Braaten's order, Judge Kleven needed to again consider the issues necessary to resolve the competing claims.

### III

[¶ 16] The Bank also contends Fargo Water is not a party to the contract between Molstad and Haycraft and thus cannot sue under the contract provision in question. Therefore, the Bank argues the district court erred by granting summary judgment to Fargo Water.

[¶ 17] The standard of review for summary judgments is well-established. In *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615 (citations omitted), this Court explained:

Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.'" On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment

is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

[¶ 18]   Paragraph 2 of the Molstad/Haycraft agreement provides:

That if notification of any claims have been made against the Sub–Contractor or the Contractor arising out of labor or materials furnished the Project or otherwise on account of any actions or failures to act by the Sub–Contractor in the performance of this Sub–Contract, the Contractor may, at his discretion, withhold such amounts otherwise due or to become due hereunder to cover said claims and any cost or expense arising or to arise in connection therewith pending settlement thereof.   The exercise of this right by the Contractor shall not bar the exercise of any other rights of the Contractor herein or by law provided.

■   [¶ 19]   A contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting.   N.D.C.C. § 9–07–03; *Ag Acceptance Corp. v. Glinz*, 2004 ND 154, ¶ 12, 684 N.W.2d 632.   "Construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation."   *Ag Acceptance Corp.*, at ¶ 12.

■   [¶ 20]   "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."   N.D.C.C. § 9–02–04.   "To enforce a contract between two others, a third party must have been intended by the contracting parties to be benefited by the contract."   *Apache Corp. v. MDU Resources Group, Inc.*, 1999

ND 247, ¶ 10, 603 N.W.2d 891.   To determine whether the contract at issue was made expressly for the third party's benefit, "we must look to the intentions of the parties to the contract."   *O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385, 388 (N.D.1982).   "The intentions of the parties to a contract must be ascertained from the written contract alone, if possible."   *Id.*   "Another guideline for determining whether a party is a third-party beneficiary, as opposed to an incidental beneficiary, is whether the benefit to the third party was 'within the contemplation' of the contracting parties."   *Moen v. Norwest Bank of Minot*, 647 F.Supp. 1333, 1341–42 (D.N.D.1986).

[¶ 21]   In a case where a third party creditor claimed he was expressly benefited by a contract between two other parties, this Court held that payment of a debt claimed by a third party would be an incidental benefit of a contract where "such payment was not expressly provided for."   *O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385, 389 (N.D. 1982).   Because the contracting parties did not expressly intend to benefit the third party, this party was merely an incidental beneficiary to the contract and could not prevail in an action under the contract against the two contracting parties.   *Id.*   In another case where a bank agreed to pay all of a customer's overdrafts, this Court held parties who were paid by the customer's bank checks were only incidental beneficiaries even though they would benefit from the bank's agreement to pay for the overdrafts.   *Hellman v. Thiele*, 413 N.W.2d 321, 325 (N.D.1987).   We held the contract was for the primary benefit of the bank and its customer and any benefits flowing to the third parties were purely incidental.   *Id.*

[¶ 22]   In a Minnesota case involving a nearly identical provision as that contained

in Paragraph 2, the Minnesota Supreme Court held:

> It is true that this provision of the contract undoubtedly gives the contractor the right at his discretion to withhold payments to make sure that the claims of laborers and materialmen are paid. However, the language does not permit the construction now sought by Barnes that it is mandatory for the contractor to withhold such funds. *Obviously, the purpose of this type of contract provision is to protect the contractor from unpaid claims of those who have a charge against the project.* (emphasis supplied)

*Barnes Truck. Serv. v. Hasslen Const. Co.*, 303 Minn. 311, 227 N.W.2d 563, 566 (1975). We agree with the Minnesota court that these provisions are primarily for the benefit of the owner, Molstad, and Paragraph 2 does not entitle Fargo Water, as a third party beneficiary, to the money withheld. To the extent that the trial court awarded Fargo Water summary judgment as a third party beneficiary, we disagree with the trial court.

[¶ 23] However this does not end our inquiry. We will not set aside a correct result merely because the district court assigned an incorrect reason if the result is the same under the correct law and reasoning. *State ex rel. N.D. Housing Finance Agency v. Center Mutual Ins. Co.*, 2006 ND 175, ¶ 12, 720 N.W.2d 425.

[¶ 24] The trial court held Molstad was contractually entitled to withhold these funds pursuant to Paragraph 2 and the Bank, as an assignee of Haycraft, is also bound by this contractual language. We agree. Paragraph 2 allows Molstad to withhold funds it owes to Haycraft in the event Haycraft does not pay a subcontractor or supplier hired by Haycraft. Haycraft did not pay its supplier, Fargo Water. Nevertheless, this provision does not allow Molstad to permanently retain the moneys; rather we conclude it allows Molstad to pay the subcontractor or supplier out of the withheld funds. While Fargo Water does not have a cause of action against Molstad as a third party beneficiary, Molstad does have the discretion to pay either Fargo Water or the Bank as the assignee of Haycraft. It is for Molstad to consider the consequences of whatever action it takes.

[¶ 25] Here the record reflects in the Affidavit of Molstad Excavating, Inc. In Resistance to Plaintiff's Motion for Summary Judgment, and the attachment thereto of a letter from Douglas Christensen, Attorney for Molstad, that Molstad intends to distribute the $21,033.72 owed to Haycraft Construction Co. as follows:

1. $20,000 will be paid to Fargo Water Equipment to satisfy the balance of invoice # 42330.00

2. $1,033.72 will be paid to Haycraft Construction, Inc.

[¶ 26] The trial court judgment ordered payment of $20,000 to Fargo Water. Because the judgment reflects the announced intention of Molstad and because Molstad had the discretion to distribute the money to Fargo Water or to the Bank, as Haycraft's assignee, we affirm the judgment.

## IV

[¶ 27] Affirmed.

[¶ 28] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.