2006 ND 217

John HILD, also known as John W. Hild, Betty Jo Ridl and Robert Hild, Plaintiffs and Appellants,

v.

Robert Post JOHNSON, Gerald J. Elkins, Donna J. Elkins, Beth Ann Martin, Turm Oil, Inc., A.V.M., Inc., Mike Golden, Reginia Jacobson and John G. Jacobson, or their successors in trust, as Trustees for the Jacobson Trust, Black Stone Minerals Company, L.P., Palace Exploration Company, Dance Creek L.L.C. and Coleman Oil, Inc., Defendants and Appellees.

No. 20060056.

Supreme Court of North Dakota.

Oct. 20, 2006.

Albert J. Hardy, Hardy, Maus & Nordsven, P.C., Dickinson, N.D., for plaintiffs and appellants.

Brian R. Bjella (argued), Fleck, Mather & Strutz, Bismarck, N.D., for defendants and appellees Robert Post Johnson, Gerald J. Elkins, Donna J. Elkins, Beth Ann Martin, Turm Oil, Inc., A.V.M., Inc., Mike Golden, Reginia Jacobson, and John G. Jacobson, or their successors in trust, and Trustees for the Jacobson Trust, and Black Stone Minerals Company, L.P.

Lawrence Bender (appeared), Pearce & Durick, Bismarck, N.D., for defendants and appellees Palace Exploration Company, Dance Creek L.L.C. and Coleman Oil, Inc.

KAPSNER, Justice.

[¶ 1] John Hild, Betty Jo Ridl, and Robert Hild ("Hilds") appeal from a district court judgment quieting title in certain mineral interests in Robert Johnson and various other mineral owners (collectively "Johnson") who claim an interest through J.E. and Thalia Harding. We affirm, concluding (1) a grant of an undivided mineral interest expressed as a fraction conveys that quantum in the entire described tract of land, even if the tract contains more or less acreage than contemplated by the parties, and (2) when there is a discrepancy in a deed between the specific description of the property conveyed and an expression of the quantity conveyed, the specific description is controlling.

I

[¶ 2] This dispute centers upon the mineral acres underlying the Little Missouri River in a section of land ("Section 21") in Billings County. Prior to 1992, it had not been conclusively determined whether the Little Missouri River was a navigable waterway at the time of statehood in 1889. If it was a navigable waterway, all rights, including mineral rights, to the land underlying the river belonged to the State of North Dakota under the "equal footing" doctrine and the Submerged Lands Act of 1953. *See* 43 U.S.C. § 1311; *State ex rel. Sprynczynatyk v. Mills*, 523 N.W.2d 537, 539 (N.D.1994); *J.P. Furlong Enters., Inc. v. Sun Exploration and Prod. Co.*, 423 N.W.2d 130, 132 (N.D.1988). If the river was not navigable, however, ownership of the land underlying the river and the accompanying mineral interests belonged to the owners of the adjacent land. *See* N.D.C.C. § 47–01–15; *Kim–Go v. J.P. Furlong Enters., Inc.*, 460 N.W.2d 694, 696–97 (N.D.1990); *Amoco Oil Co. v. State Highway Dep't*, 262 N.W.2d 726, 730 (N.D.1978).

[¶ 3] In January 1960, Joe Hild acquired title to all of Section 21 by marshal's deed. The deed described the land conveyed as all of Section 21, "containing 582.76 acres, more or less." The 582.76 acres represented all of the land in Section 21 less the 57.24 acres underlying the river. In March 1960, Joe Hild and his wife conveyed an undivided 382.76/582.76 interest in the oil, gas, and minerals in all of Section 21 to J.E. and Thalia Harding. The mineral deed described the land as:

All of Section Twenty-one (21) in Township One Hundred Thirty-nine (139) North of Range One Hundred Two (102) West, containing 582.76 acres, more or less.

[¶ 4] In 1992, the United States Court of Appeals for the Eighth Circuit upheld a federal district court's finding that the Little Missouri River was not navigable at the time of statehood, and therefore the State did not own the land or mineral interests underlying the river. *See North Dakota v. United States*, 972 F.2d 235 (8th Cir.1992).

[¶ 5] In 2000, Joe Hild conveyed his mineral interests in Section 21 to the Hilds. The Hardings' mineral interests in Section 21 had passed to Johnson. In 2004, the Hilds brought this quiet title action against Johnson, claiming ownership of all mineral interests underlying the river. On cross-motions for summary judgment, the district court determined the 1960 mineral deed from Joe Hild and his wife to the Hardings conveyed an undivided 382.76/582.76 fractional interest in the minerals in all of Section 21, including that portion lying beneath the river. Judgment

was entered quieting title in those minerals in Johnson. The Hilds have appealed, arguing that the district court misinterpreted the 1960 mineral deed and that they own all of the mineral interests underlying the river.

## II

[¶ 6] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for the prompt resolution of a controversy on the merits if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Peoples State Bank of Truman, Inc. v. Molstad Excavating, Inc.,* 2006 ND 183, ¶ 17, 721 N.W.2d 43; *State ex rel. N.D. Hous. Fin. Agency v. Center Mut. Ins. Co.,* 2006 ND 175, ¶ 8, 720 N.W.2d 425. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. *State ex rel. N.D. Hous. Fin. Agency,* at ¶ 9; *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 ND 84, ¶ 4, 712 N.W.2d 828. Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. *ACUITY v. Burd & Smith Constr., Inc.,* 2006 ND 187, ¶ 6, 721 N.W.2d 33; *Peoples State Bank,* at ¶ 17. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. *Peoples State Bank,* at ¶ 17; *Farmers Ins. Exch. v. Schirado,* 2006 ND 141, ¶ 9, 717 N.W.2d 576.

## III

[¶ 7] The Hilds argue the district court erred in concluding the 1960 mineral deed conveyed an undivided 382.76/582.76 mineral interest in the full 640 acres in Section 21 to the Hardings. The Hilds contend the deed conveyed only 382.76 mineral acres, and the construction applied by the district court failed to give effect to the statement in the deed that the described land in question contained "582.76 acres, more or less."

### A

[¶ 8] Our interpretation of the 1960 mineral deed is governed by established rules of construction. A deed conveying an undivided interest in a portion of the minerals in a tract of land will generally take one of three forms:

> The three most commonly used methods of stating the quantum of a mineral interest conveyed or reserved are percentage interests, fractional interests and interests denoted by a particular number of acres of minerals.

*Arnold v. State,* 750 P.2d 1137, 1139 (Okla. App.1987); *see* 1 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law* § 320.2 (2005); North Dakota Mineral Title Standards (1989), Standard 3–02. The various forms are outlined in 1 Williams & Meyers, *supra,* § 320.2, at 663–64 (footnotes omitted):

> The owner of 100% of the minerals in a tract of land may convey an undivided interest therein by at least three methods. For illustration, suppose the tract (Blackacre) is thought to contain 40 acres and that the owner (R) and the purchaser (E) agree on the transfer of one-half of R's interest. The deed effectuating this agreement could take one of three forms, as follows:
>
> Form 1. R could transfer to E "an undivided one-half interest in all oil, gas or other minerals in, on and under" Blackacre.
>
> Form 2. R could transfer to E "an undivided fifty percent (50%) of all oil,

gas and other minerals in, on and under" Blackacre.

Form 3. R could transfer to E "an undivided twenty (20) acres in all oil, gas and other minerals in, on and under" Blackacre.

So far as we are aware, no difference in consequences will attend the use of Form 1 as opposed to Form 2, above. However, Form 3 will have a different effect from Forms 1 and 2 under certain circumstances.

*See also* North Dakota Mineral Title Standards (1989), Comment to Standard 3–02. The differing consequences stemming from use of a fractional or percentage description, as opposed to a grant of a specified number of mineral acres, arises when the described tract of land contains more or less than the assumed number of acres:

> [A] transfer of an undivided interest by fraction or percentage gives that quantum of interest in the land described by the deed, to the extent the grantor has title to such land. The grantee of a fractional or percentage mineral interest gains by an excess of acreage and loses by a shortage of acreage. On the other hand, the grantee of undivided mineral acres neither gains nor loses by variations in acreage. His mineral acres becomes the numerator and the grantor's total acreage becomes the denominator in calculating the fractional interest grantee owns in the land.

1 Williams & Meyers, *supra*, § 320.2, at 667 (footnote omitted).

[¶ 9] The practical effect of the rule is explained in 1 Eugene Kuntz, *Oil and Gas* § 16.3, at 492–93 (1987) (footnotes omitted):

> A mineral acre represents the full mineral interest on one acre, as an undivided interest in a larger described tract of land.... Consequently, in a tract containing 160 acres, an 80 acre mineral interest would be the same as an undivided 1/2 mineral interest.

> It makes no difference which form of description is used so long as the tract contains the assumed number of acres. If, however, the tract contains more or less than the assumed number of acres, it will make a difference. In the illustration used, if the tract in fact contains only 150 acres, the use of a fraction would result in a smaller interest being conveyed or reserved than would be reserved or conveyed by the use of the mineral acre designation. If the fraction were used to designate the interest, the interest would consist of an undivided 1/2 interest in 150 acres. If, on the other hand, the mineral acre designation were used, the interest would consist of 80 mineral acres out of 150, or an 8/15 undivided interest. Conversely, if the tract contains 170 acres, the use of the fraction would describe an undivided 1/2 interest in 170 acres, whereas the use of mineral acres would produce an interest consisting of 80 mineral acres out of 170, or an 8/17 undivided interest.

[¶ 10] The rule has been expressly adopted in the North Dakota Mineral Title Standards (1989), Standard 3–02:

> The grantee of undivided mineral acres acquires the mineral acres provided for in the conveyance, regardless of the acreage of the land conveyed, but such interest is limited to the extent the grantor has title to such lands. A conveyance of an undivided mineral interest by percentage or fraction results in the grantee acquiring the quantum of interest in the lands described by the conveyance, but limited to the extent the grantor has title to such lands. As a result, the grantee of a fractional or percentage mineral interest gains by an excess of acreage and loses by a shortage of acreage, while the grantee of undivided min-

eral acres neither gains nor loses by an excess or shortage of acreage.

[¶ 11] In this case, the 1960 mineral deed expressly conveyed an undivided interest, expressed as a fraction, in the minerals in all of Section 21. Under the accepted rules of construction for mineral deeds, the grantees therefore acquired the stated fractional interest in all of the described tract, and gained when there was an excess in acreage above the amount contemplated by the parties. Accordingly, the district court did not err when it concluded the 1960 deed conveyed to the Hardings an undivided 382.76/582.76 mineral interest in all 640 acres of Section 21.

### B

[¶ 12] The Hilds contend the district court's interpretation of the 1960 mineral deed failed to give effect to the description of the tract as containing "582.76 acres, more or less." Again, interpretation of the deed is governed by well-established rules of construction.

■ [¶ 13] When there is a discrepancy in a deed between the specific description of the property conveyed and an expression of the quantity conveyed, the specific description is controlling. The rule is summarized in *Jordan v. Tinnin,* 342 So.2d 748, 751 (Ala.1977) (quoting *Bankhead v. Jackson,* 257 Ala. 131, 57 So.2d 609, 610 (1952)):

> "[W]here a conveyance of land contains a definite description by subdivisions, or metes and bounds, or both, the addition of a statement of the number of acres, more or less, is merely cumulative matter of description and in construing the deed as written, the particular description controls."

[¶ 14] When a deed purports to convey a specific tract of land with a designation that it contains a given number of acres "more or less," the deed will be construed to convey the entire tract:

> "Accordingly, where the deed purports to convey the whole of a designated tract, with the description of it as containing a given number of acres 'more or less,' the primary significance of the deed is that the grantor intended to convey all the land in the tract described, whatever may be its acreage, and the grant is not defeated by a discrepancy between the recited and the actual area."

*Sansing v. Thomas,* 211 Miss. 727, 52 So.2d 478, 481 (1951) (quoting 16 Am.Jur. *Deeds* § 282). The same principle is expressed in 12 Am.Jur.2d *Boundaries* § 73 (1997) (footnotes omitted):

> [W]hen a specified tract of land is sold, the entire tract ordinarily passes, although it exceeds the quantity mentioned in the deed. This is especially true where the land is represented to contain a certain number of acres "more or less."

*See also* 23 Am.Jur.2d *Deeds* § 251 (2002).

■ [¶ 15] When "a deed contains an adequate, particular description of the property conveyed, it will not be controlled by a recital therein of the quantity," 26A C.J.S. *Deeds* § 220, at 245 (2001), because quantity is the least reliable of all elements of description in a deed:

> Quantity, however, is the least certain of all the elements of description which are usually found in a deed, and the recital as to the number of acres has perhaps the least influence of any of the matters which may be considered in determining what land is conveyed. All other elements of description must lose their superior value through ambiguities and uncertainties before resort can be had to the recital as to quantity.

*Id.* at 246 (footnotes omitted); *see, e.g., Ewell v. Weagley,* 13 F.2d 712, 714 (4th Cir.1926); *Koennicke v. Maiorano,* 43 Conn.App. 1, 682 A.2d 1046, 1053 (1996); *Lopez v. Smith,* 145 So.2d 509, 518 (Fla. Dist.Ct.App.1962); *Anderson–Prichard Oil Corp. v. Key Okla. Oil Co.,* 149 Okla. 262, 299 P. 850, 853 (1931); *Hardin v. Chapman,* 36 Tenn.App. 343, 255 S.W.2d 707, 711 (1952); *see also* 12 Am.Jur.2d *Boundaries* § 73 ("[q]uantity is the least reliable of all descriptive particulars in a conveyance and the last to be resorted to"). In addition, this Court has noted that a stated quantity expressed in a deed may be considered in determining the property conveyed "if no other description be given." *Mitchell v. Nicholson,* 71 N.D. 521, 526, 3 N.W.2d 83, 85 (1942).

[¶ 16] The 1960 mineral deed granted a specified fractional interest in "All of Section Twenty-one" in a designated township and range. A statement in a deed of the quantity of land conveyed may be considered only if all other elements of description in the deed are ambiguous or uncertain. *E.g.,* 26A C.J.S. *Deeds* § 220 (2001); *Ewell,* 13 F.2d at 714; *Lopez,* 145 So.2d at 518; *Anderson–Prichard Oil,* 299 P. at 853; *Hardin,* 255 S.W.2d at 711. In this case, the description of the land is clear, giving a full legal description of a particular section in a designated township and range. There is no ambiguity or uncertainty in the legal description of the tract, and it is readily identifiable. Under these circumstances, the particular description of the land controls over the recitation that the land contains a certain number of acres "more or less."

## IV

[¶ 17] Applying established rules of construction of deeds, the 1960 mineral deed clearly and unambiguously conveyed a specific percentage of the minerals in a particularly described tract of land. Ac-cordingly, the district court did not err in determining that the 1960 mineral deed conveyed to the Hardings an undivided 382.76/582.76 interest in the minerals in all 640 acres of Section 21, including that portion underlying the river.

[¶ 18] The judgment is affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., and BENNY A. GRAFF, S.J., and MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

[¶ 20] The Honorable BENNY A. GRAFF, S.J., sitting in place of SANDSTROM, J., disqualified.